UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANA WALSTROM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-0071-CVE-PJC |
| ) | |
| STATE OF OKLAHOMA, ex rel. BOARD ) | |
| OF REGENTS OF THE UNIVERSITY OF ) | |
| OKLAHOMA, DR. LINDA ANDREWS, ) | |
| and DR. LARRY MINKS, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is Defendants' Motion to Dismiss with Brief in Support (Dkt. # 4). Defendants ask the Court to dismiss each of plaintiff's claims under Fed. R. Civ. P. 12(b)(1) or (b)(6). Plaintiff responds that she has adequately pled each of her claims, and defendants' motion to dismiss should be denied in its entirety.

**I.**

Plaintiff states that she began working for Rogers State University (RSU)[1] in August 2005, and her supervisor was Dr. Linda Andrews (Dr. Andrews), Assistant Vice President of Institutional Research of RSU. Plaintiff claims that she discovered that RSU was misappropriating funds

---

[1] In her amended petition, plaintiff named the State of Oklahoma, ex rel. Board of Regents of the University of Oklahoma, Cameron University, and Rogers State University as defendants. Dkt. # 3-2, at 53. On February 18, 2009, the Court entered an order (Dkt. # 9) clarifying that proper defendant is simply the State of Oklahoma, ex rel. Board of Regents of the University of Oklahoma. In this Opinion and Order, the Court will refer to the State, the Regents, and RSU collectively as "RSU."

1

allocated for a program known as "Bit-by-Bit." Dkt. # 3-2, at 54. She states that Bit-by-Bit is a "therapeutic horse-riding program" provided by RSU for individuals with disabilities. Id. at 53. Plaintiff states that she questioned why RSU was spending money designated for Bit-by-Bit on other programs, and she e-mailed and left a voicemail message for Dr. Larry Minks (Dr. Minks) alleging that $6,500 of funding designated for Bit-by-Bit was spent by other departments or programs of RSU. Id. at 54.

Plaintiff claims that RSU terminated her employment two days after she attempted to contact Dr. Minks. Plaintiff states that she was told to sign a voluntary resignation form and, if she refused to sign the form, Dr. Minks and Dr. Andrews threatened to withhold any payment for services plaintiff had already performed. Dr. Minks and Dr. Andrews allegedly asked plaintiff to sign a "general release and settlement agreement," releasing any claims against RSU and its employees from any liability related to plaintiff's allegations of misappropriation of funds and a "gag order" preventing plaintiff from disclosing the alleged illegal conduct to any third-party. Id. at 54. Plaintiff claims that she signed the voluntary resignation form under duress and her resignation was official on January 14, 2008.

Plaintiff filed a petition in Rogers County District Court, Oklahoma on August 21, 2008, alleging that she was wrongfully terminated in violation of her right to free speech under the Oklahoma Constitution and in violation of Oklahoma's Whistleblower Act, OKLA. STAT. tit. 74, § 840-2.5, breach of contract, tortious interference with contract, and civil conspiracy. The state court granted a motion to dismiss as to plaintiff's claims of wrongful discharge under the Whistleblower Act and breach of contract, but plaintiff was permitted to file an amended petition. Id. at 52. Plaintiff filed an amended petition attempting to state various claims, but without separate counts.

See OKLA STAT. tit. 12, § 2010(B). As best the Court can tell, plaintiff is attempting to allege: a 42 U.S.C. § 1983 claim; a claim of wrongful termination in violation of an Oklahoma public policy under Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989); claims of intentional interference with prospective economic advantage and/or contract; and a civil conspiracy claim. It appears that plaintiff is asserting a Burk tort, based on an alleged violation of Article II, § 22 of the Oklahoma Constitution, against RSU, and a § 1983 claim and state law claims of intentional interference with prospective economic advantage and/or contract and civil conspiracy against the individual defendants. Dkt. # 3-2, at 55-56. Defendants removed the case to this Court on February 12, 2009. Dkt. # 3.

## II.

RSU asserts that it is immune from suit under the Eleventh Amendment of the United States Constitution, and this matter goes to the Court's subject matter jurisdiction. Robinson v. Kansas, 295 F.3d 1183, 1188 (10th Cir. 2002). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Fed. R. Civ. P. 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs, Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, RSU asserts that the Court lacks subject matter jurisdiction over plaintiff's claims against it because it has Eleventh Amendment immunity from suit, but RSU does not challenge the factual allegations of

plaintiff's amended petition. In analyzing such motions to dismiss, the Court must presume all of the allegations contained in the amended petition are true. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995).

Defendants also ask the Court to dismiss each of plaintiff's claims under Rule 12(b)(6). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, the United States Supreme Court recently held that Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombley, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

Defendants request dismissal of each of plaintiff's claims. RSU argues that it has sovereign immunity from plaintiff's wrongful termination claim, because it has not waived its immunity from suit under the Eleventh Amendment to the United States Constitution. Defendants also seek dismissal of plaintiff's claims under Rule 12(b)(6).

**A.**

RSU asserts that it has sovereign immunity from plaintiff's wrongful termination claim and it has not expressly or impliedly waived its immunity from suit under the Eleventh Amendment. Plaintiff argues that RSU waived any defense of sovereign immunity by removing this case to federal court. Both parties rely on the Supreme Court's decision in Wisconsin Dep't of Corrections v. Schact, 524 U.S. 381 (1998), to support their arguments.

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. CONST. amend. XI. This amendment bars suits against a state in federal court by citizens of that state or another state unless the state consents to proceeding with the case in federal court. Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity may be raised by any entity that qualifies as an "arm of the state." Steadfast Ins. Co. v. Agricultural Ins. Co., 507 F.3d 1250, 1253 (10th Cir. 2007). However, sovereign immunity is not absolute. Congress may waive a state's sovereign immunity when exercising its power to enforce the Fourteenth Amendment of the United States Constitution or a state may expressly or impliedly consent to suit in federal court. College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S.

5

666, 670 (1999). A state waives its sovereign immunity when it voluntarily enters an appearance in federal court or invokes the jurisdiction of the federal court. Lapides v. Bd. of Regents of Univ. System of Georgia, 535 U.S. 613 (2002).

The Court finds that RSU waived its sovereign immunity to plaintiff's wrongful termination claim by removing the case to federal court. Plaintiff originally filed her case in state court and all defendants consented to removal of the case to federal court. In this case, plaintiff does not dispute that RSU is an agency of the State of Oklahoma and may a raise the defense of sovereign immunity unless this defense has unequivocally been waived. Plaintiff argues, and the Court agrees, that removal of a case to federal court constitutes an intentional waiver of the RSU's defense of sovereign immunity. Steadfast Ins. Co., 507 F.3d at 1256 ("An arm of the state may waive its sovereign immunity by removing a case to federal court"); Schrier v. University of Colorado, 427 F.3d 1253 (10th Cir. 2005) ("we have unequivocally held that a state entity waives its Eleventh Amendment immunity by affirmative litigation conduct such as removing a case to federal court"); Estes v. Wyoming Dep't of Transp., 302 F.3d 1200, 1204 (10th Cir. 2002) (a state waives its sovereign immunity as to state law claims by removing a case to federal court); McLaughlin v. Bd. of Trustees of State Colleges of Colorado, 215 F.3d 1168 (10th Cir. 2000) (state agency's removal of case to federal court demonstrated an express intention to invoke the jurisdiction of the federal court and constituted "an 'extraordinarily effective waiver'" of sovereign immunity); Sutton v. Utah State Sch. for Deaf and Blind, 173 F.3d 1226, 1234 (10th Cir. 1999) ("an unequivocal intent to waive immunity seems clear when a state, facing suit in its own courts, purposefully seeks a federal forum"). RSU argues that it may still assert sovereign immunity because it raised a defense of sovereign immunity "immediately" after removing the case to federal court. However, RSU

chose to invoke this Court's jurisdiction and it waived its immunity from plaintiff's wrongful termination claim at the time it removed the case to federal court. Although RSU cites Schact to support its argument, Schact does not address the precise issue before the Court and, in a subsequent case, the Supreme Court clearly held that a state's decision to join in the removal of a case to federal court waives its sovereign immunity. Lapides, 535 U.S. at 624 (noting the "seriously unfair results" that would occur if a state were permitted to invoke a federal court's jurisdiction and simultaneously claim Eleventh Amendment immunity). Therefore, RSU has waived its Eleventh Amendment immunity and it is not immune to plaintiff's wrongful termination claim.

**B.**

The individual defendants, Dr. Mink and Dr. Andrews, argue that plaintiff has failed to state a § 1983 claim against them and, even if she has stated a claim, defendants are entitled to qualified immunity. Plaintiff responds that she has alleged an adequate claim for deprivation of her Constitutional rights pursuant to § 1983.

Section 1983 provides a cause of action against state officials for a violation of a plaintiff's constitutional rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim, plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). "The core inquiry under any § 1983 action . . . is whether the plaintiff has alleged an actionable constitutional violation." Id. In addition, the defendant must have been a state actor acting under the color of state law when the alleged constitutional violation occurred. See Anderson, 499 F.3d at 1232-33 (citations omitted).

In some circumstances, a public employee may bring a § 1983 claim against a governmental employer for alleged violations of the employee's First Amendment rights. Moore v. City of Wynnewood, 57 F.3d 924, 931 (10th Cir. 1995). In order to establish the first element of an actionable § 1983 claim, a violation of a right secured by the Constitution, plaintiff's claim must satisfy the elements established by the Supreme Court in Pickering v. Board of Education, 391 U.S. 563 (1968), as recently modified in Garcetti v. Ceballos, 547 U.S. 410 (2006). Dixon v. Kirkpatrick, 553 F.3d 1294, 1301-02 (10th Cir. 2009). Under the modified Garcetti/Pickering analysis, plaintiff must satisfy a five-prong test and show:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Dixon, 553 F.3d at 1302 (citation omitted). If plaintiff fails to properly establish a claim under § 1983, the Court need not consider the issue of qualified immunity. Moore, 57 F.3d at 931.

Plaintiff's amended petition fails to allege facts sufficient to conclude whether her claim conforms to the first requirement of the modified Garcetti/Pickering test. When a public employee makes statements pursuant to her official duties, the employee is not speaking as a private citizen for First Amendment purposes and the Constitution does not insulate her communication from employer discipline. Garcetti, 547 U.S. at 424. Plaintiff's amended petition merely states "[t]hat Plaintiff is a former employee of Defendant [sic] began employment in August of 2005 and was terminated and forced to resign by Defendant on January 14, 2008." Dkt. # 3-2, at 53. Plaintiff fails to allege any facts concerning her official duties. Since a § 1983 claim must be based on a violation

of the federal Constitution, the Garcetti analysis applies and plaintiff must allege that the protected speech was not within the course of her official duties. Plaintiff's amended petition fails to do so and she cannot establish a First Amendment violation under Garcetti/Pickering test. Thus, plaintiff has not stated a claim under § 1983 upon which relief can be granted under Rule 12(b)(6), and her § 1983 claim must be dismissed. Since plaintiff failed to state a claim under § 1983, the Court does not need to consider the issue of qualified immunity. See Moore, 57 F.3d at 931.

### C.

In addition to her § 1983 claim against the individual defendants, plaintiff has also alleged various state law claims against each defendant. However, the Court has disposed of all claims over which it has original jurisdiction. Under 28 U.S.C. § 1367(c), a federal district court may decline supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." The Court recognizes that it has discretion to retain jurisdiction over supplemental state law claims in some circumstances. United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). However, in Gibbs, the Supreme Court also stated that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." Id. at 726. A federal district court should consider at every stage of the litigation "the values of judicial economy, convenience, fairness and comity" in order to determine the appropriateness of maintaining jurisdiction. Carneige-Mellon University v. Cohill, 484 U.S. 343, 350 (1988). Although recognizing that Gibbs did not present an inflexible rule, in Cohill, the Supreme Court counseled that:

> [w]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

Id. The Tenth Circuit has stated that "[w]hen all federal claims have been dismissed, the court may and usually should, decline to exercise jurisdiction over any remaining state law claims." Smith v. City of Enid by and through Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998).

In this case, the Court has found that defendants' motion to dismiss should be granted as to plaintiff's § 1983 claim. Without plaintiff's §1983 claim, the Court does not have original jurisdiction over any of the surviving claims because they do not present a federal question and the parties are not diverse. The Court must determine whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. The Court has not entered a scheduling order, and the parties have not expended substantial time and resources on discovery. Sullivan v. Scoular Grain Co. of Utah, 930 F.2d 798 (10th Cir. 1991). The state law claims do not raise any issues which would implicate federal law. In fact, plaintiff's remaining claims raise issues of unclear state law, particularly the interpretation of the Oklahoma Constitution art. II, § 22, that are best left to state courts to decide in the first instance. In such circumstances, the Supreme Court has counseled that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . . ." Gibbs, 383 U.S. at 726. The Court finds that, in the interests of comity and for the convenience of the parties, plaintiff's remaining claims should be remanded to state court.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss with Brief in Support (Dkt. # 4) is **granted in part** and **moot in part**: plaintiff's § 1983 claim is **dismissed**, and the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to remand this case to the District Court of Rogers County, Oklahoma.

**DATED** this 11th day of June, 2009.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Case 4:09-cv-00071-CVE-PJC   Document 14 Filed in USDC ND/OK on 06/11/09   Page 11 of 11